# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DONALD ALBERT TRANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 16-2336-JWL** |
| **NANCY A. BERRYHILL,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding the Administrative Law Judge (ALJ) erroneously applied the Medical-Vocational Guidelines (hereinafter, grids), the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff applied for DIB, alleging disability beginning July 1, 2012.  (R. 57, 196).

Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review

of the final decision denying benefits.  He argues that the ALJ erred in failing to develop

a full and fair record in the proceedings below, erred in evaluating Plaintiff's mental

impairments at step two which resulted in his using the grids erroneously to direct a

finding at step five of the sequential evaluation process, and erred in weighing the

medical opinion of Dr. Williams.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052

(10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he

findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual

findings are supported by substantial evidence in the record and whether he applied the

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord,

White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than

a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S.

389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804

(10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors

3

of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erroneously applied the grids to direct a finding at step five of the sequential evaluation process. Although the court entertains serious doubt regarding Plaintiff's argument that an ALJ must obtain a medical opinion regarding RFC whenever the state agency medical and psychological consultants all opine that there is insufficient evidence to make a disability determination, it need not decide that issue because remand is necessary in any case. If desired, Plaintiff may make his argument regarding developing the record to the Commissioner in the first instance. Plaintiff may also argue to the Commissioner on remand that Dr. Williams's opinion is worthy of greater weight.

## II.     Discussion

Plaintiff argues that the ALJ erred at step two in finding that Plaintiff's mental impairments are not severe within the meaning of the Act, that those impairments are in fact severe, and that Plaintiff was harmed by the error because the ALJ failed to consult a

vocational expert (hereinafter VE) and assess the impact of non-exertional limitations resulting from Plaintiff's mental impairments on the range of work available to Plaintiff at step five of the sequential evaluation process. (Pl. Br. 5-15). The Commissioner argues that the ALJ properly found at step two that Plaintiff's mental impairments are not severe, and the ALJ findings are supported by the record evidence. (Comm'r Br. 5-8). The court reviews the ALJ's decision, and finds error in the ALJ's application of the grids based on a somewhat different rationale than applied by Plaintiff.

An impairment is not considered severe if it does not significantly limit a claimant's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521. The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, a claimant must make only a "de minimis" showing. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997). He need only show that an impairment would have more than a minimal effect on his ability to do basic work activities. Williams, 844 F.2d 748, 751 (10th Cir. 1988). However, he must show more than the mere presence of a condition or ailment. Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)). If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from

engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

However, once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another impairment "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any impairment, if considered separately, would be of sufficient severity.  Hill v. Astrue, 289 F. App'x. 289, 291-292, (10th Cir. 2008); Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir. 2008).  The failure to find additional impairments are also severe is not itself cause for reversal so long as the ALJ, in determining Plaintiff's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"  Hill, 289 F. App'x at 291-92; see also, Rutherford v. Barnhart, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment . . . need not be "severe"); 20 C.F.R. § 404.1523 ("the combined impact of the impairments will be considered throughout").  Thus, whether or not the ALJ properly determined Plaintiff's mental impairments are severe within the meaning of the Act, he was required to consider the limitations resulting from those impairments in his step four and step five analyses because he found that Plaintiff has "medically determinable mental impairments of obesity, substance addiction disorder, anxiety, and depression."  (R. 59).

Here, the ALJ made divergent findings at step two.  He found that Plaintiff's medically determinable mental impairments "do not cause more than minimal limitations

6

in the claimant's ability to perform basic mental work activities" (R. 59-60), that Plaintiff

has "no more than mild mental limitations on his ability to perform basic work activities

for any period of 12 months or longer," and that his drug addiction and alcoholism "is

found to cause no more than minimal limitations because he never had more than mild

limitations arising from symptoms relating to marijuana use for 12 months or longer." (R.

61). But, mild limitations are not the same as no limitations resulting from mental

impairments, including substance abuse. Moreover, the ALJ also found that Plaintiff has

no limitation in activities of daily living, social functioning, or in concentration,

persistence, or pace, and no episodes of decompensation. (R. 61). This is, at the least,

confusing.

The ALJ determined Plaintiff has the RFC "to perform a full range of medium

work." (R. 62). And, in his step five determination, the ALJ stated, "Based on a residual

functional capacity for the full range of medium work, considering the claimant's age,

education, and work experience, a finding of 'not disabled' is directed by Medical-

Vocational Rule 203.19 and Rule 203.12." (R. 66) (emphasis added). Yet, nowhere in

his RFC assessment did the ALJ discuss Plaintiff's mental impairments or find that

Plaintiff's mental impairments produce no limitations. (R. 62-65).

In the grids, the Commissioner has provided a tool to aid in making uniform,

efficient decisions in determining the types and numbers of jobs existing in the national

economy for certain classes of claimants. Heckler v. Campbell, 461 U.S. 458, 468

(1983). However, the grids are applicable "only when they describe a claimant's abilities

7

and limitations accurately." Id. 461 U.S. at 462 n.5; see also Channel v. Heckler, 747

F.2d 577, 579 (10th Cir. 1984). Because the grids are based upon the physical exertion

requirements for work in the national economy, they may not be fully applicable for

claimants who have nonexertional limitations. Channel, 747 F.2d at 580. Realizing this

limitation on the use of the grids, the Commissioner has promulgated a procedure for

evaluating claims where both exertional and nonexertional limitations are present:

> [W]here an individual has an impairment or combination of impairments
> resulting in both strength limitations and nonexertional limitations, the rules
> in this subpart are considered in determining first whether a finding of
> disabled may be possible based on the strength limitations alone and, if not,
> the rule(s) reflecting the individual's maximum residual strength
> capabilities, age, education, and work experience provide a framework for
> consideration of how much the individual's work capability is further
> diminished in terms of any types of jobs that would be contraindicated by
> the nonexertional limitations.

20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2); see also Channel, 747 F.2d at 580-

81.

The grids direct a finding in a particular case only when there is an "exact fit"

between the criteria of the grid and the situation before the ALJ. Campbell, 461 U.S. at

468; Channel, 747 F.2d at 579. Where the grid rules do not direct a finding, "full

consideration must be given to all of the relevant facts in the case in accordance with the

definitions and discussions of each factor in the appropriate sections of the regulations

which will provide insight into the adjudicative weight to be accorded each factor." 20

C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); see also Channel, 747 F.2d at 579-82

(application of the grids where nonexertional limitations are present).

Where plaintiff is unable to do a full range of work in an exertional category, the ALJ may not conclusively apply the grids. Channel, 747 F.2d at 582 (error to apply the grids absent a finding that plaintiff could perform the full range of sedentary work). Instead, he "must give 'full consideration' to 'all the relevant facts,' App. 2, § 200.00(e)(2), including expert vocational testimony if necessary, in determining whether [Plaintiff] is or is not disabled." Channel, 747 F.2d at 583. Where nonexertional limitations affect the range of work of which Plaintiff is capable, the grids may serve only as a framework to assist in determining whether sufficient jobs exist in the national economy given Plaintiff's limitations and characteristics. Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988).

But, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids. Use of the grids is foreclosed only '[t]o the extent that nonexertional impairments further limit the range of jobs available to the [Plaintiff].'" Channel, 747 F.2d at 583, n.6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)). Thus, use of a vocational expert is required only where Plaintiff's nonexertional impairments cause a limitation on the range of work available in a particular occupational base and where no other evidence (either in the record or in occupational resources upon which the Commissioner may rely, see 20 C.F.R. § 404.1566(d)) establishes that a significant number of jobs of which plaintiff is capable are available. Where the grids establish that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs. Campbell, 461 U.S. at 468-70.

To be sure, the ALJ in this case found that Plaintiff is able to perform the full range of medium work. But, as noted above, he made inconsistent findings at step two regarding limitations resulting from Plaintiff's mental impairments, and during his RFC assessment he did not discuss whether Plaintiff's mental impairments produce any limitations on his ability to perform the full range of medium work. While it will be possible in certain circumstances to determine that a claimant's mental impairments do not reduce the occupational base for medium work, it will be necessary for the ALJ to determine the functional limitations caused by the mental impairments and to explain their impact on that base. If he finds that the mental impairments cause no limitations, it will be necessary to state and to explain that finding based upon the record evidence. Here, the ALJ did neither. Remand is necessary for a proper evaluation of Plaintiff's mental impairments even if they are not severe within the meaning of the Act.

The court notes three other factors relevant to its consideration. The ALJ stated that Plaintiff was able to perform activities of daily living "with no reported lack of motivation" (R. 61), but the record reveals that on April 2, 2014 Plaintiff complained of "not wanting to do anything" (R. 336), and his psychiatrist assessed "poor motivation." (R. 338). Absent some sort of explanation, the record will not support the ALJ's finding. The same is true of the ALJ's finding that Plaintiff "is able to live in an institutional setting with other prisoners, with no reports of behavioral problems." (R. 61). The record reveals an incident on January 22-23 where Plaintiff was moved to segregated housing in prison and had several problems relating at least to the staff. (R. 488-92).

Plaintiff continued to have problems and he remained in segregation more than a month later. (R. 495, 509). Finally, the court notes that in his step four analysis, the ALJ stated, "The vocational expert testified that an individual of the claimant's vocational profile, who is limited to the performance of the residual functional capacity outlined above, would be unable to perform any of the claimant's past relevant work." (R. 65). The record reveals that a VE was present at the ALJ's hearing, but the transcript reveals that she did not testify. (R. 72, 83). The ALJ's statement only further erodes the court's confidence in his consideration of the vocational evidence and the grids.

The decision in this case is inadequately and somewhat confusingly explained and the evidence does not support the decision. Remand is necessary to correct these errors.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 17th day of August 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**